**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
LAKES GAS CO.,                      )
                                    )
                Plaintiff,          )    CIVIL ACTION
                                    )
v.                                  )    No. 10-1212-MLB-KGG
                                    )
LOU'S LP CO., FENCL OIL & LP CO.,   )
INC., D&J FEED SERVICE, INC.,       )
CAMPBELL OIL CO., JOHNSON OIL       )
COMPANY, HANSEN GAS CO.,            )
                                    )
                Defendants.         )
                                    )
```

**MEMORANDUM AND ORDER**

Before the court are the following:

1) Plaintiff's motion to consolidate. (Doc. 22). Defendants' response (Doc. 24) and plaintiff's reply (Doc. 25).

2) Defendants' motion and renewed motion to dismiss or alternatively transfer.[1] (Docs. 14, 19) and memorandum in support (Doc. 15). Plaintiff's response (Doc. 21) and defendants' reply (Doc. 23).

**I. FACTS**

Plaintiff is a Minnesota corporation that sells propane gas to various customers throughout the Midwest. Plaintiff uses independent contractors to take orders from customers and remit the customers' orders back to plaintiff. David Stevenson, who operated Summit and is a resident of Iowa, was an independent contractor for plaintiff. Plaintiff would not sell gas directly to Stevenson.

---

[1] After defendants' first motion to dismiss, plaintiff filed an amended complaint. (Doc. 16).

Defendants are Iowa companies that placed orders with Stevenson for gas sold by plaintiff. Between 2003 and 2008, plaintiff alleges that defendants entered into a scheme with Stevenson where he would place orders with plaintiff in the name of defendants. Plaintiff would then prepare a Product Transfer Order ("PTO") and issue it to Williams Energy facility in Conway, Kansas ("Williams") where plaintiff stored its gas that is at issue in this case. On the PTOs, plaintiff listed defendants as the "end line customers," i.e. the person who was actually purchasing the gas. In this case, plaintiff would also list Clark Oil Trading Company ("Clark") as the "receiving customer" because defendants would use its storage credit at Williams to store the gas.

Williams would receive the PTO's from plaintiff, allocate the ordered gas to Clark as the receiving customer, and then issue defendants an invoice for payment. Defendants would receive money from Stevenson or Summit, who had received payment from Clark, to pay for the gas along with a commission or kickback. Defendants would then take this money and pay plaintiff for the gas. Clark would then resell the gas to its customers.[2]

In July 2008, plaintiff transferred millions of gallons of gas to Clark based on orders placed by Stevenson in defendants' names. Defendants deny authorizing these particular orders and refuse to make payment to plaintiff. Plaintiff alleges that defendants did not receive money from Stevenson and/or Stevenson's checks did not clear. As a result, defendants called plaintiff and told it not to cash their

---

[2] Plaintiff initiated a suit against Clark in an earlier action. See Lakes Gas Co. v. Clark Oil Trading Company, No. 08-1293-WEB.

checks issued in July 2008 because there were insufficient funds in defendants' accounts to cover the checks payable to plaintiff.

## II. MOTION TO DISMISS

Defendants move to dismiss plaintiff's amended complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, defendants move to transfer to the United States District Court for the Northern District of Iowa, Cedar Rapids Division pursuant to 28 U.S.C. § 1404(a).

It is well established that under a Rule 12(b)(2) motion to dismiss, plaintiff must make a prima facie showing that the court has personal jurisdiction over the defendant. See Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). The court must accept plaintiff's allegations as true and resolve all factual disputes in its favor notwithstanding contrary positions by defendants. Heating and Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc., 935 F. Supp. 1167, 1169 (D. Kan. 1996).

A federal court sitting in diversity applies the law of the forum state. Marcus Food Co. v. Crown Meat Co., Inc., 779 F. Supp. 514, 518 (D. Kan. 1991). Therefore, the court applies Kansas personal jurisdiction rules. To establish personal jurisdiction, plaintiff must show that: 1) the jurisdiction is authorized under Kansas law and 2) the exercise of such jurisdiction would not offend due process. See Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006).

### A. Kansas Long-Arm Statute

The Kansas long-arm statute specifies that a party submits to the jurisdiction of Kansas if the cause of action against it "aris[es]

from the doing of any of [eleven particular] acts." K.S.A. 60-308(b). The Tenth Circuit has interpreted the Kansas long-arm statute "to allow jurisdiction to the full extent permitted by due process," such that these two inquiries become duplicative. Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1305 (10th Cir. 1994); see also OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1090 (10th Cir. 1998) (explaining that a court, when considering a 12(b)(2) motion under Kansas law, may proceed directly to the constitutional issue). One Kansas court has held, however, that "[t]he fact that 60-308(b) is to be liberally construed does not mean that the courts are to ignore the statutory requirement that the cause of action arise from the defendant's doing of one or more of the enumerated acts in this state." Three Ten Enters., Inc. v. State Farm Fire & Cas. Co., 24 Kan. App. 2d 85, 91, 942 P.2d 62, 67 (Kan. Ct. App. 1997).

The Kansas Long-Arm Statute, K.S.A. 60-308(b) provides, in pertinent part:

> [a]ny person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
>   (A)  Transacting any business in this state;
>
>   (B) commission of a tortious act within this
>   state;

Physical presence within the forum state is not necessary. When the defendant has purposefully availed itself of the protections and benefits of the forum state, jurisdiction will be found reasonable.

Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd., 385 F.3d 1291, 1296 (10th Cir. 2004).

Plaintiff initially contends that defendants submitted to personal jurisdiction in Kansas when they transacted business in Kansas.

> There are three basic factors which must coincide if jurisdiction is to be entertained over a nonresident on the basis of transaction of business within the state. These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation ...

Marcus Food Co., 779 F. Supp. at 519.

While actual physical presence within the state is not required, there must be some actual contact or action by the nonresident defendants with the forum state. Schlatter v. Mo-Comm Futures, Ltd., 233 Kan. 324, 337, 662 P.2d 553, 563 (1983). Defendants cite several Kansas cases in support of their position that the contact here was sufficient. Those cases, however, are distinguishable.

In Etienne v. Wolverine Tube, Inc., 12 F. Supp. 2d 1173, 1178 (D. Kan. 1998), the court found that the transacting business prong was satisfied because the defendant had negotiated an employment contract with the plaintiff, a Kansas resident. The defendant was found to have purposefully directed several contacts with the plaintiff while the plaintiff resided in Kansas. In this case, defendants' contacts with Stevenson all occurred in Iowa. While the subject matter of the

contacts concerned a scheme to purchase Kansas gas, none of the contacts ever occurred in Kansas. The other cases cited by defendants, with the exception of Schlatter[3], are similar to Etienne in that there were sufficient contacts with the state of Kansas. See Buford v. First Sunset Dev., Inc., No. 95-1075, 1995 WL 396608, 1 (D. Kan. June 9, 1995)(defendant negotiated a business deal with plaintiff, a Kansas resident, which included numerous contacts to plaintiff while he was in Kansas); Thermal Insulation Sys., Inc. v. Ark-Seal Corp., 508 F. Supp. 434 (D. Kan. 1980)(plaintiff, a Kansas resident, purchased defendant's product which was shipped to Kansas and defendant had several contacts with plaintiff in Kansas); Envtl. Ventures, Inc. v. Alda Servs. Corp., 19 Kan. App.2d 292, 294, 868 P.2d 540, 542 (1994)(president of plaintiff corporation, a Kansas resident, had several contacts with defendant in purchasing an aircraft).

In Green Country Crude, Inc. v. Avant Petroleum, Inc., 648 F. Supp. 1443 (D. Kan. 1986), this court held that the transacting business prong was not met even though the oil that was the subject of the transactions was located in Kansas. In Green County, the plaintiff was a Kansas resident who sold the defendant its oil pursuant to a contract. The contract was negotiated outside of Kansas. The only contacts to Kansas were various telephone calls and the fact that the oil was located in Kansas. The court found that the

---

[3] In Schlatter, the plaintiff, a Kansas resident, filed suit against a corporation and its shareholders after being sold unregistered securities by an employee of the corporation. The Kansas Supreme Court held that personal jurisdiction of the individual shareholder defendants was not proper under the transacting business prong because the defendants were not involved in the transactions. 233 Kan. at 337. The corporation, however, did not move for dismissal and a verdict was ultimately awarded against it.

presence of the oil in Kansas was not significant because it did not affect the transaction. The defendant did not care where the oil came from "as long as it was marketable crude." 648 F. Supp. at 1449.

In this case, the allegations of the amended complaint allege that defendants had no need whatsoever of the gas that was stored in Kansas. Defendants' involvement in the transaction was solely on paper and they had no intention of physically taking possession of the gas stored in Kansas. Moreover, the gas was immediately transferred to Clark who in turn sold the gas to individual customers. The fact that the gas was stored in Kansas was not an integral aspect of the transactions. Defendants were involved in this alleged scheme so that they could receive a kickback from Stevenson. Similar to Green County, the only contact with Kansas is the location of the gas and, moreover, that fact was presumably of no relevance to defendants who were only involved to gain a monetary benefit from Stevenson and were not going to sell the gas to consumers. The court finds that the only connection to Kansas concerning these transactions is the location of the gas and that is not sufficient to satisfy the transacting business prong of the long-arm statute.

Alternatively, plaintiff asserts that its injury was felt in Kansas even though defendants' tortious acts were committed outside of Kansas. The court disagrees. While the tortious acts may have been committed outside of Kansas, the injury was felt by plaintiff in Minnesota, its place of incorporation and principal place of business. See First Magnus Fin. Corp. v. Star Equity Funding, L.L.C., No. 06-2426, 2007 WL 635312, *7 (D. Kan. Feb. 27, 2007)(injury felt where corporation's principal place of business is located).

Based on the foregoing facts, the court cannot conclude that the location of the stored gas, standing alone, gave defendants fair warning that they would be subject to personal jurisdiction in Kansas. Burger King v. Rudzewicz, 471 U.S. 462, 472-73 (1985). The court further concludes that the contacts with Kansas are such that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. Accordingly, the court holds that it does not have personal jurisdiction over defendants.

**III. CONCLUSION**

For the reasons stated above, defendants' motion and renewed motion to dismiss or alternatively transfer (Docs. 14, 19) are granted. Plaintiff's motion to consolidate (Doc. 22) is denied as moot.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this 29th day of March 2011, at Wichita, Kansas.

                                      s/ Monti Belot

                                      Monti L. Belot

                                      UNITED STATES DISTRICT JUDGE